## DOING *v.* NEW YORK, O. & W. RY. CO.

*(Supreme Court, General Term, Fourth Department. February, 1892.)*

NEW TRIAL—WHEN GRANTED—MISTRIAL.

    At the trial of an action against a railroad company for damages for negligently causing death, defendant moved for a nonsuit after the court had reached the conclusion that, "as a matter of law, the decedent had equal opportunities of knowledge of the custom of the employes in kicking cars into the cripple track," on which he was employed, "as had the defendant company, and that by continuing in their employ, without protest and with that knowledge, he had assumed the risk, and for the injury received therefrom the company cannot be liable;" but, instead of granting the motion for a nonsuit, the court permitted plaintiff to stipulate that, if the court should decide thereafter that the evidence was insufficient to go to the jury, a decision should be made, and plaintiff should "stand in precisely the same relation and position" as if a nonsuit had been granted on the trial, and then submitted the case to the jury, which rendered a verdict for plaintiff. On motion of defendant, the court granted a new trial, without regard to the stipulation made during the trial. *Held*, that there was a mistrial in the court below, and that the order granting a new trial would be affirmed on appeal.

Appeal from circuit court, Chenango county.

Action by Loren Doing, as administrator of Robert P. Hare, deceased, against the New York, Ontario & Western Railway Company for damages for negligently causing the death of plaintiff's intestate. Verdict for plaintiff for $4,000. From an order granting a new trial plaintiff appeals. Affirmed.

On the 3d day of March, 1890, Robert P. Hare, the deceased, was in the employ of the defendant as car-repairer, and at work in the defendant's repair-shop, in the village of Norwich, repairing one of its cars, which stood upon a track running into and through the building, and extending from the building to another track in defendant's yard connected therewith by a switch. The servants of the defendant coupled one of its engines and tender to a platform-car heavily loaded with scrap-iron, and drew it beyond the intersection of the track that ran into the repair-shop, and then uncoupled the platform-car, reversed the engine, and ran up said track leading into said shop; and it is alleged in the complaint that the car was "carelessly and negligently shunted or kicked, * * * with so much force that it could not be stopped by the brakeman thereon, but said car went crashing through the closed doors of said shop, and came in collision with the car under which said Robert P. Hare was at work for the defendant, repairing the same as aforesaid, and pushed said car upon and against said Hare with so much force that he died on the 4th day of March, 1890, of the injuries thus sustained." After the opening made by the plaintiff the defendant moved to dismiss the complaint, which motion was made upon the complaint itself; and the defendant's counsel stated "that here is a direct allegation of custom to do this very thing set out in the complaint,—a custom that had been existing for some time,—and they say that the company ought to have knowledge of it; and, if the company ought to have knowledge of it, the man working on the same track should have knowledge of it; and, of course, if he did, there could be no recovery." In response to that motion and statement the court observed: "I will hear the evidence in the case, and deny the motion." An exception was taken by the defendant. The general rules of the defendant, found in a printed

book containing 690 rules, were introduced in evidence by the plaintiff, "from which it appeared that there was no rule forbidding the kicking or shunting of cars upon these three cripple tracks, or, in terms, regulating the movement of cars thereon." When the plaintiff rested, the defendant moved for a nonsuit. Thereupon the plaintiff's counsel stated: "The cause of action is that they were bound to establish a reasonable and proper rule for the protection of the workmen in the machine-shop." Thereupon the court observed: "My present impressions in this case are that a rule by the company, assuming the practice to be dangerous, would not be called for unless the practice was so prevalent as to give them constructive notice of the fact that it was being done; and, if the practice was prevalent enough for that purpose, that it would be prevalent enough for the purpose of giving notice to this man, who had an equal opportunity, at least, of ascertaining what the fact was, and ascertaining the danger; and, if he remained an employe of the company, I don't think the defendant would be liable. But I will not decide the case now, but will hear the evidence of the defendant on the other branch of the case, on the question as to the defect in this car. * * * I will deny the motion for a nonsuit at present." An exception was taken by the defendant. After the defendant's evidence was closed, the plaintiff again stated: "We say that this is a question for the jury to say as to whether this company should have made a rule prohibiting the kicking of cars on these cripple tracks; and if they should have made such a rule, and failed to do so, that they are liable in this action; and also whether this deceased was chargeable with knowledge of this custom to an extent to relieve the defendant from liability." In the course of the observations made by the court in denying the motion, it was said: "Now, if it had notice of the fact that such was the custom, I think it would be a question for the jury to say whether—*First*, it was a dangerous custom; and, *second*, whether the defendant had this notice; and, *third*, whether, having this notice of the dangerous custom, it was the defendant's duty to promulgate a rule forbidding it. Now, that would create a liability on the part of the defendant for any injury resulting, unless the plaintiff had knowledge of the fact that such custom existed, in which case the defendant would be relieved from liability; because a railroad corporation, or any master, is not bound to take any more care for the safety of an employe than he is bound to take for his own safety. And if he knew of the fact of a dangerous custom existing, and made no complaint and no request to obviate it, then it is very clear that, if he does not take care of his own safety, his employer is not bound to take care of his safety. There is some evidence from which, possibly, the jury might find that he did not know; that is, there is enough, I think, possibly, to submit to the jury on the question as to these two or three other employes or co-employes of the plaintiff. They—some of them—having sworn they did not know of that fact, there may be some evidence to submit to the jury as to whether he did know of the custom, notwithstanding the fact that he had been there eight months. I shall hold this as a matter of law, unless the plaintiff will stipulate, upon a motion for a new trial, in case they should be successful, that, if I determine that the evidence is not sufficient to go to the jury, I may then set aside any verdict they may obtain, and grant the motion as of nonsuit, and as of the time before the verdict was taken. If they will stipulate to that effect, I will submit this case to the jury upon the questions: (1) As to whether there was a custom of shunting or kicking these cars into these cripple switches; (2) as to whether this defendant had constructive notice of such custom; (3) as to whether there should have been a rule of the company forbidding the shunting of these cars into these cripple switches; (4) as to whether the plaintiff's intestate had notice of the custom of shunting these cars in; (5) as to whether the plaintiff's intestate was guilty of contributory negligence." Thereupon the counsel for the plaintiff stated: "That is satisfactory to us, only we wish it understood

that, if you should decide against us, we shall stand in precisely the same re-
lation and position that we would if you granted them a nonsuit here to-day."
In response thereto the court observed: "The court will protect the plaintiff
in the matter. You may insert any requests to go to the jury, and a refusal
and exception." Thereupon the defendant's counsel took an exception to the
denying of the motion for a nonsuit at this time. In the course of the charge
delivered to the jury the court observed: "But if you find that such a custom
existed; that it was known to the defendant's officers to exist; and that a
reasonable regard for the safety of employes required that a rule should be
made forbidding the kicking of cars into these cripple tracks,—then you will
reach the fourth proposition, which the plaintiff must establish in order to
recover, and that is that Robert P. Hare did not himself have knowledge of
this custom. * * * If Robert P. Hare had been working there from July,
and he had had knowledge of the fact that these cars were being kicked in,
and he had made no complaint to the company, then, if the company were
held liable for this death, you can see it would be unreasonable; for the com-
pany is not bound to take greater care of his life than he himself chooses to
take." At the close of the charge the court, in response to certain requests,
charged "that, if Robert P. Hare had the means of knowledge, he should
have known of the custom; *second*, that, if he had the opportunity of know-
ing, he should have known of the custom." In response to a request to
charge, "If the custom was in operation,—was used around him,—he would
be presumed to know," the court observed, "I decline to charge upon that
other than I have already charged;" and the defendant took an exception.
After the verdict of $4,000 was given for the plaintiff, an order was made al-
lowing the defendant to have 90 days to make and serve a case and excep-
tions, and the plaintiff to have a like time to make amendments, "and that
until the hearing and determination of said motion for a new trial entry of
judgment and all other proceedings herein be stayed."

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

W. F. Jenks, for appellant. Howard D. Newton, for respondent.

HARDIN, P. J. We have looked into the opinion delivered by the learned
circuit judge commenting upon the case, and we find the conclusion of his
opinion to be as follows: "It must be held, therefore, as a matter of law, that
the decedent, Hare, had equal opportunities of knowledge of the custom of
the employes in kicking cars into that cripple track as had the defendant
company, and that by continuing in their employ, without protest and with
that knowledge, he had assumed the risk, and for the injury resulting there-
from the company cannot be held liable." The court made an order "that
the motion for a new trial be, and the same is hereby, granted, with costs to
the defendant to abide the event of the action." Important and serious ques-
tions were involved in the trial. It was, in effect, stipulated upon the trial
that if the court should at a subsequent stage be of the opinion that the plain-
tiff was, for any reason, not entitled to recover, the decision should be made,
and the plaintiff should "stand in precisely the same relation and position
that" he had if the nonsuit were granted upon the trial. Apparently the
court yielded to the language used by the plaintiff in the stipulation given
by the plaintiff on the trial. The order made upon granting a new trial does
not observe and carry out the stipulation made during the progress of the
trial. Without passing upon the serious questions involved in the merits of
the action, we are inclined to hold that there was a mistrial. We are there-
fore inclined to the conclusion that the rights of the respective parties can be
more safely and reasonably protected by requiring a new trial to be had, be-
fore expressing our opinion upon the questions involved in the merits. We
therefore direct a new trial, and in form sustain the order appealed from. We

think the order should be affirmed, without costs to either party.   Order affirmed, without costs.

MARTIN, J., concurs in result.   MERWIN, J., concurs.